**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**ALLEN DEAN WASHBURN,**

**Plaintiff,**

**v.** **CASE NO. 17-3108-SAC**

**TREGO COUNTY JAIL, et al.,**

**Defendants.**

**NOTICE AND ORDER TO SHOW CAUSE**

This pro se civil rights complaint was filed pursuant to 42 U.S.C. § 1983 by a former pre-trial detainee of the Trego County Jail. Plaintiff proceeds in forma pauperis and alleges that constitutional violations occurred during his pre-trial confinement. He sues unnamed employees of the Trego County Jail and the Trego County Sheriff's Department and seeks $1.5 million dollars, payment of his medical bills, and compensation for missed work.

## I. Procedural background

Plaintiff initially filed suit against the Trego County Jail. (Doc. 1). Because a jail is not a person subject to suit under § 1983, however, the court directed plaintiff to file an amended complaint that names the person or persons whose acts or omissions violated his federal rights and provides detailed information specifying how and when each violation occurred, and the injury caused. (Doc. 5). In response, plaintiff filed an amended complaint against unnamed employees of the Trego County Jail and the Trego County Sheriff's Department. (Doc. 6). Because the complaint named no individual defendants, the court directed preparation of a *Martinez* report.[1]

[1] A *Martinez* report ensures that a factually sufficient record is developed in cases involving pro se prisoners. *See Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978). The report "is not only

**II. Allegations in the Complaint**

Plaintiff alleges that he had "major surgery" on his leg shortly before being arrested and confined to the Trego County Jail (after an initial brief confinement at the Saline County Jail), where he alleges that he was held in an unsanitary cell and was provided no cleaning supplies.

In Count I, plaintiff claims that despite his request, jail officials refused to allow him to see a doctor or go to an emergency room for treatment of his leg, and refused to provide him with bandages or antibiotic ointment until his wound "burst" and he was "deathly ill". Plaintiff states that he later tested positive for MRSA, which required IV antibiotic treatments and additional surgery and caused him to miss work.

In Count II, plaintiff alleges that he wrote a letter to his personal physician which jail officials failed to send and instead placed the letter with plaintiff's personal property.

**III. Screening Under 28 U.S.C. § 1915A**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988)

---

proper, but may be necessary to develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v.*

*Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## IV. Analysis

### A. Inadequate Medical Care

In Count I, Plaintiff principally alleges that he received inadequate medical care during his incarceration at the Trego County Jail. Specifically, plaintiff claims that jail staff refused his request to see a physician to treat his leg, upon which he recently had surgery. He alleges that as a result, his leg "burst" and that he developed MRSA, which required additional substantial treatment and caused him to miss work.

Because he was a pretrial detainee during the relevant time, plaintiff's right to adequate medical care was guaranteed by the Due Process Clause of the Fourteenth Amendment. *Oxendine v. Kaplan*, 241 F.3d 127, 1275 n. 6 (10th Cir. 2001). Under the Due Process Clause, "pretrial detainees are … entitled to the degree of protection against denial of medical attention which applies to convicted inmates" under the Eighth Amendment. *Garcia v. Salt Lake Cty*., 768 F.2d 303, 307 (10th Cir. 1985). Under the Eighth Amendment, prison officials "must ensure that

inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). This standard has both objective and subjective components. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)(citing *Estelle*, *id*.). Under the objective portion of the analysis, a medical need is serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)(internal quotation marks and citations omitted). Under the subjective portion of the analysis, the defendant prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Within this framework, "an inadvertent failure to provide adequate medical care" does not violate a prisoner's constitutional rights. *See Estelle*, 429 U.S. at 105-06 ("A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Likewise, a difference in opinion between a prisoner and medical personnel is insufficient to state a claim for relief. *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976); *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002). Finally, a delay in providing medical care violates the Constitution only where that delay resulted in substantial harm. *Oxendine*, 241 F.3d at 1276 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)).

Here, the Martinez report reflects that plaintiff was confined for approximately six days at the Trego County Jail – from May 26, 2016 through June 1, 2016. When he was booked into the jail, plaintiff was using crutches and had a leg brace and overlying ace bandage wrap on his lower left leg because he had recently had open reduction internal fixation surgery. While performing usual intake procedures, plaintiff informed staff he was taking prescribed medication but did not request immediate medical attention. The jail began administering three of plaintiff's four prescriptions (including an antibiotic and two pain medications) according to its usual distribution schedule but discontinued administration of oxycodone because it is a Schedule II narcotic and its use had not been specifically authorized for plaintiff by the jail's medical services provider.

On May 27, 2016, plaintiff completed an inmate request form in which he complained that he was being denied medical rights. Specifically, he stated that he could not wear his brace or elevate his leg according to doctor's orders, that he was being denied pain medication, that his leg was very infected and his stitches required removal, and that he wished to see a licensed doctor. In response, jail staff discussed with plaintiff that they removed the bandage because plaintiff was not using it properly. Jail staff also contacted the office of the physician assistant which provides medical services to the jail and reported plaintiff's requests.

On May 30, 2016, plaintiff verbally complained during breakfast to jail staff that his stitches required removal and he was concerned about infection in the surgery site. Jail staff examined plaintiff and observed redness but no other signs of illness and noted that plaintiff was receiving antibiotics and pain medication, and reported plaintiff's condition to the physician assistant, who then visited the jail to check on plaintiff. At that time, the physician assistant cleaned the surgical site and removed the stitches. He noted increased "purulent discharge" after removing

the stitches, and obtained a wound culture which he forwarded to the lab. He dressed the surgical site and authorized administration of Percocet to plaintiff.

Records from Trego County Jail indicate that plaintiff received medical care during his incarceration there, including checks by jail staff and prescribed medication. On this record, the court can find no basis for a claim of deliberate indifference. Jail staff were aware plaintiff had a medical condition and provided medical care to plaintiff during his brief incarceration. When a prisoner like plaintiff is receiving medical treatment but merely disagrees with the diagnosis or prescribed course of treatment, he does not state a constitutional violation. *Perkins v. Kan. Dept. of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999). And a negligent failure to provide adequate care – even when such a failure constitutes medical malpractice – does not amount to a constitutional violation. *Id.* Jail staff treated plaintiff with medication, and to the extent they became concerned about plaintiff's condition they reported it to the physician assistant, who then provided prompt treatment to plaintiff. When the record reveals that jail officials recognized a medical need and treated it – as is the case here – no constitutional violation arises. Accordingly, Count I is subject to dismissal.

**B. Plaintiff's Mail**

In Count II, plaintiff conclusorily alleges that he wrote a letter to his personal physician which jail officials failed to send and instead placed the letter with plaintiff's personal property. The *Martinez* report indicates that no letters were confiscated or remained in plaintiff's personal property, and the log for plaintiff shows that during his stay he mailed three letters, and that none of those letters was addressed to plaintiff's physician.

Even taking plaintiff at his word (notwithstanding the factual discrepancy) plaintiff's allegations do not give rise to liability under 42 U.S.C. § 1983, because negligence does not give

rise to liability under § 1983. *Medina v. City and County of Denver*, 960 F.2d 1493, 1500 (10th Cir. 1992). As such, inadvertent, negligent mishandling of an inmate's mail does not violate the Constitution. *Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005). Petitioner claims that his mail was not sent, but he provides no dates or details to support these claims, and he makes no claim or allegation that any failure to send his mail involved more than inadvertent negligence. Accordingly, Count II is subject to dismissal.

**I. Conclusion**

Having considered the amended complaint and the *Martinez* report, the Court directs plaintiff to show cause why this matter should not be dismissed for failure to state a claim upon which relief may be granted. Plaintiff's response may not rest on generalizations – he must provide specific factual allegations.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff is granted until May 18, 2018, to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why plaintiff's claims should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED.**

Dated this 18th day of April, 2018, at Topeka, Kansas.

**s/Sam A. Crow**
**U. S. Senior District Judge**